IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JANIE MICHELE JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:16-cv-885-GMB |
| | ) | [WO] |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Janie Michele Johnson filed this action on November 14, 2016 seeking judicial review of a final adverse decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Doc. 1. Johnson applied for disability benefits with an alleged disability onset date of March 1, 2014. Her application was denied at the initial administrative level. Johnson then requested and received a hearing before an Administrative Law Judge ("ALJ") on September 22, 2015. Following that hearing, the ALJ denied Johnson's claims on November 4, 2015. The Appeals Council rejected a subsequent request for review making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner").[1]

With briefing complete, this case is now ripe for review pursuant to 42 U.S.C.

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

§ 405(g). The parties have consented to the entry of a final judgment by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and Rule 73.1 of the Local Rules for the United States District Court for the Middle District of Alabama. Docs. 8 & 9. Based upon a review of the evidentiary record, the parties' briefs, and the applicable legal authority, the court finds that the Commissioner's decision is due to be AFFIRMED.

## I. STANDARD OF REVIEW

The court reviews a social security case to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (internal quotation marks omitted). Indeed, the court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied." *Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

"Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Jones ex rel. T.J.J. v. Astrue*, 2011 WL 1706465, at *1 (M.D. Ala. May 5, 2011) (citing *Lewis*, 125 F.3d at 1440). The court must scrutinize the entire record to determine the reasonableness of

the decision reached. *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). "If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as a finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision." *Jones*, 2011 WL 1706465, at *2 (citing *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991)). The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991); *Jones*, 2011 WL 1706465, at *2 (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Johnson bears the burden of proving that she is disabled, and she is responsible for producing evidence to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the Commissioner must determine in sequence:

(1) Is the claimant presently unemployed?
(2) Is the claimant's impairment severe?
(3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform his or her former occupation?
(5) Is the claimant unable to perform any other work within the economy?

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III. DISCUSSION

**A.    Facts**

Johnson was 48 years old on the alleged disability onset date. She has a high school education and past relevant work experience as an assistant retail manager, a dispatcher, and a clerical worker.

Johnson filed for disability benefits based on stomach pain and distension, chronic obstructive pulmonary disease, high blood pressure, high cholesterol, and liver problems. The ALJ held an administrative hearing on September 22, 2015. Following that hearing,

4

the ALJ found that Johnson suffers from the severe impairments of asthma, chronic obstructive pulmonary disease, abdominal distention, and obesity, but that none of those impairments or a combination of those impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). The ALJ then determined that Johnson has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she can

> never climb ladders, ropes, or scaffolds and occasionally climb stairs, crouch, crawl, stoop, and kneel. The claimant must avoid work at unprotected heights and avoid concentrated exposure to fumes, dusts, and gasses [sic]. Due to medication, the claimant is limited to unskilled work, making simple decisions, with few workplace changes.

Doc. 13-2. Ultimately, the ALJ concluded that Johnson was not disabled within the meaning of the Social Security Act and denied her claim. Johnson timely appealed that decision to this court.

**B.    Issues Presented**

Johnson presents the following issues[2] for review:

1.    Whether the ALJ erred by substituting his opinion for the opinion of a medical professional;

2.    Whether the ALJ's RFC analysis is supported by substantial evidence;

3.    Whether the ALJ improperly rejected uncontroverted medical evidence; and

---

[2] These are the "issues presented" by Johnson in her brief. Any issue not raised before the court is deemed to be waived. *See Dial v. Berryhill*, 2017 WL 459859, at *3 (M.D. Ala. Feb. 2, 2017) (citing *Simpson v. Comm'r of Soc. Sec.*, 423 F. App'x 882, 885 (11th Cir. 2011) (concluding in a social security case that issues not raised before the district court are waived)).

4. Whether the ALJ failed to evaluate properly Johnson's mental impairment. Doc. 11 at 1. The Commissioner contends that the ALJ's decision is supported by substantial evidence and due to be affirmed. Doc. 12. After careful consideration of the parties' arguments, the applicable authority, and the record as a whole, the court agrees with the Commissioner and finds that the Commissioner's decision is due to be AFFIRMED, as set forth below.

**C. Analysis**

*1. Evaluation of Johnson's Mental Impairment*

Both the first and last issues raised by Johnson in her brief challenge the ALJ's evaluation of her alleged mental impairment. Because resolution of those issues is intertwined, the court will discuss them collectively below.

Johnson first contends that the ALJ improperly substituted his opinion for the opinion of a medical professional when he rejected the diagnosis of non-severe anxiety made by Dr. Robert Estock, a state-agency non-examining physician.[3] The record shows that, after reviewing Johnson's medical records, Dr. Estock concluded that she had the non-severe impairment of anxiety with mild restrictions in activities of daily living; maintaining social function; and maintaining concentration, persistence, or pace. However, when asked to provide "additional explanation," Dr. Estock clarified that Johnson "alleges only physical limitations" and "has a [prior medical history] of anxiety" but "takes no mental meds," has had no psychiatric treatment, and her activities of daily

---

[3] Neither the record nor the parties specify Dr. Estock's specialty, if any.

living "note no problems w/ mental limitations." Doc. 13-3.

In formulating Johnson's RFC, the ALJ rejected Dr. Estock's diagnosis, instead finding that Johnson had no mental impairment whatsoever. Specifically, the ALJ explained:

> Dr. Estock, the state agency consulting physician who reviewed the medical records available on May 2, 2014, found the claimant to have nonsevere mental impairment. The undersigned finds the claimant to have no mental impairment, and that the claimant did not testify to any mental impairment. The claimant's only allegations of a mental impairment are regarding side effects of her medication causing her to be unable to concentrate. The undersigned has found the claimant to be generally not credible, including statements as to the severity of her medication side effects.

Doc. 13-2. From this conclusion, Johnson contends that the ALJ committed reversible error by impermissibly substituting his own opinion for that of Dr. Estock, a medical professional, on the issue of whether she has a mental impairment.

When assessing medical opinions, the ALJ must consider several factors to determine how much weight to give the opinion, "including whether the physician has examined the claimant; the length, nature, and extent of a treating physician's relationship with the claimant; the medical evidence and explanation supporting the physician's opinion; how consistent the physician's opinion is with the 'record as a whole'; and the physician's specialty." *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (citing 20 C.F.R. §§ 404.15267(c) & 416.927(c)). "These factors apply to both examining and non-examining physicians." *Id.* The ALJ "must state with particularity the weight given to different medical opinions and his supporting reasons." *Id.* "The opinion of a non-examining physician 'taken alone' does not constitute substantial evidence to

support" an ALJ's decision. *Id.* (quoting *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990)). Ultimately, however, the ALJ is "free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Id.* (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

The court finds that the ALJ did not err by impermissibly substituting his own opinion for Dr. Estock's on the issue of whether Johnson has a mental impairment. Although the ALJ did not specifically articulate the weight he assigned to Dr. Estock's opinion on that issue, the fact that he reached an entirely different conclusion than Dr. Estock—that Johnson has no mental impairment at all, rather than a non-severe mental impairment—implies that he assigned no weight to Dr. Estock's opinion. And the ALJ's reasons for doing this are adequately explained in his decision. Indeed, the hearing transcript does not reflect that Johnson complained of a mental impairment or anxiety specifically. To the contrary, she testified only about the cognitive limitations caused by the side effects of her medications, and the ALJ reasonably discounted the credibility of that testimony as not borne out by her medical and treatment records.

Johnson contends that the ALJ should not have rejected Dr. Estock's opinion because her mental impairment is supported by other medical evidence in the record. Johnson specifically points to medical records from the Mayo Clinic Jacksonville from 2012 noting that she was depressed because of her abdominal symptoms, and a note from her treating physician, Dr. Michael Williams, assessing a cognitive disorder due to her medications. Doc. 13-7. The undersigned does not find this evidence sufficient to demonstrate that the ALJ's conclusion that Johnson has no mental impairment was

erroneous or unsupported by substantial evidence. The evidence does not show that Dr. Williams and the physicians who examined Johnson at the Mayo Clinic Jacksonville are mental-health specialists, and their medical records do not reflect that she was ever specifically treated for a mental condition or illness. At most, this evidence reflects that Johnson experienced intermittent depression and frustration as a result of her abdominal pain and lack of diagnosis or effective treatment for those symptoms, but it does not evidence treatment of any mental impairment. Indeed, Dr. Williams attributed any cognitive issues solely to Johnson's medication, and even Dr. Estock's anxiety diagnosis expresses equivocation in that he qualified that diagnosis with additional explanation that Johnson complained only of physical impairments, that his finding was based solely on her past medical history, and that his finding is not supported by any evidence that she takes medications for mental illness, that she has had any psychiatric treatment, or that her activities of daily living otherwise note problems with mental limitations.

In fact, Johnson never listed a mental condition as a basis for her disability in her initial application or on reconsideration, and she has never amended her disability application to include a mental impairment or testified that her disability is based on a mental impairment. Even when Johnson updated her disability report to include new complaints of disabling back pain, she did not mention or claim that her ability to work was limited because of a mental illness or impairment. Likewise, in a function report, Johnson did not complain of limitations in her social functioning, including understanding, following instructions, paying attention, and getting along with others, and she further reported no problems with changes in stress or routine and no unusual behaviors or fears.

Johnson relies on *Carril v. Barnhart*, 201 F. Supp. 2d 1190 (N.D. Ala. 2002), to support her argument that the ALJ improperly substituted his opinion on her mental impairment for Dr. Estock's opinion. In *Carril*, the district court found that the ALJ had erred in rejecting the only medical evidence of a mental impairment to find that the claimant had no mental impairment. *Id.* at 1191. The circumstances in *Carril*, however, are different from those presented here. *Carril* involved the rejection of a consultative examination performed by a psychologist which specifically diagnosed the claimant with the severe impairment of major depressive disorder. *Id.* Here, the medical records illustrate prior medical history positive for anxiety and intermittent mentions of depression, but unlike in *Carril*, there is no evidence in Johnson's treatment history of an examination and corresponding findings of a severe mental impairment by a mental-health specialist.

In fact, in providing a comparative citation, the *Carril* court points to another case with circumstances akin to those presented here. In *Stanton v. Apfel*, 2000 WL 1005817, at *1 (S.D. Ala. July 5, 2000), the ALJ found that the claimant had no mental impairment when the administrative records contained no evidence of treatment for mental impairment or illness; the only mental health records consisted of consultative examinations from two psychologists, neither of whom had a treating relationship with the claimant or had diagnosed a specific mental disease, illness, or impairment that would significantly affect the claimant's ability to perform basic work activities; and the claimant had never alleged a mental impairment in his initial disability application or on reconsideration. *Id.* at *3−6. Finding this evidence sufficient to support the ALJ's decision, the district court rejected the claimant's argument that the ALJ had improperly substituted his opinion for that of the

psychologists and affirmed the ALJ's finding on the claimant's mental impairment as supported by substantial evidence. *Id.* at *6.

The court finds *Stanton* persuasive. As in *Stanton*, Johnson never alleged a mental impairment in her initial disability application or on reconsideration. The medical records also reflect no treatment for a mental condition, and the opinion at issue—Dr. Estock's—comes from a state-agency reviewing physician who never examined or treated Johnson. What is more, there is no diagnosis in the medical records of a specific mental disease, illness, or impairment that would significantly affect Johnson's ability to perform basic work activities. At most, the record evidence demonstrates that Johnson's cognitive abilities are affected by side effects from her medications, and the ALJ accounted for those side effects in his RFC determination by limiting her to "unskilled work, making simple decisions, with few workplace changes." Doc. 13-2. For these reasons, the court finds that the ALJ did not err by improperly substituting his opinion for Dr. Estock's when determining that Johnson has no mental impairment.

Johnson also challenges the ALJ's failure to evaluate her mental impairment pursuant to the Psychiatric Review Technique Form ("PRTF") set out by the Eleventh Circuit in *Moore v. Barnhart*, 405 F.3d 1208 (11th Cir. 2005). What this argument overlooks, however, is the fact that an ALJ is not required to apply the PRTF unless a claimant presents a "colorable claim of mental impairment." Johnson has failed to do, as she did not allege a mental impairment in her initial disability application, on reconsideration, through amendment of her application, or via testimony at her hearing before the ALJ.

"The Eleventh Circuit has found, and Defendant correctly points out, that 'an administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'" *Pierce v. Astrue*, 2012 WL 1231876, at *3 (M.D. Ala. Apr. 12, 2012) (quoting *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005)). In *Pierce*, the district court held that a claimant had not presented a colorable claim of mental impairment sufficient to trigger the ALJ's duty to apply the PRTF when she had not listed a mental impairment in her initial application, had not testified to a mental impairment at her hearing before the ALJ, and the record contained no diagnosis of a mental illness. *Id.* Although the district court noted that two physicians had referenced a mental condition or impairment in their treatment notes, the court did not find this evidence indicative of a colorable claim of mental impairment because the physicians were not "qualified mental examiners nor do their brief statements in the treatment notes qualify as objective medical evidence of a mental impairment." *Id.*

The same can be said here. Johnson did not list a mental impairment in her initial application or on reconsideration, and she did not testify to a mental impairment at her hearing before the ALJ. In fact, it is unclear from Johnson's brief precisely how she claims to be mentally impaired or how the impairment would limit her ability to work. While there are a handful of brief references to depression and anxiety in Johnson's treatment records, there is no evidence that the physicians who made these references were qualified mental examiners or, even if they were, that these references, which are buried within detailed notes about Johnson's gastrointestinal and pulmonary issues, qualify as objective medical evidence of a colorable claim of mental impairment such that the ALJ should have

engaged in the PRTF analysis. For these reasons, the court concludes that the ALJ did not err in evaluating Johnson's mental impairment.

### 2. *The ALJ's RFC Finding*

Johnson argues that the ALJ erred in his finding that she has the RFC to perform light work with certain limitations because he "does not provide analysis as to how the limitations he found are actually supported by the medical evidence." Doc. 11. Put differently, Johnson argues that because the ALJ did not provide "rationale" or "specifically point to any evidence" demonstrating that she can perform light work, his RFC finding is not supported by substantial evidence. Doc. 11.

At step four of the sequential evaluation process, the ALJ summarized Johnson's medical records and ultimately concluded that she has the RFC to perform light work except that she

> can never climb ladders, ropes, or scaffolds and occasionally climb stairs, crouch, crawl, stoop, and kneel. The claimant must avoid work at unprotected heights and avoid concentrated exposure to fumes, dusts, and gasses [sic]. Due to medication, the claimant is limited to unskilled work, making simple decisions, with few workplace changes.

Doc. 13-2. Light work is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

Johnson contends that the ALJ did not sufficiently articulate in his RFC finding how her medical records show that she can lift 20 pounds occasionally and 10 pounds frequently. To support this argument, Johnson points to a medical source statement from Dr. Williams, her treating physician, on August 4, 2014, which severely limits her ability

to do work-related physical activities in a work setting. Specifically, Dr. Williams restricts Johnson to lifting and carrying only five pounds occasionally to one pound frequently; sitting, standing, and walking a total of one hour in an eight-hour workday; never bending, stooping, operating motor vehicles, or working with or around hazardous machinery; rarely reaching (including overhead); occasionally pushing, pulling, climbing, balancing, and using gross manipulation; and frequently using fine manipulation and exposure to "environmental problems" like allergies and dust.[4] Doc. 13-7. Dr. Williams also states that Johnson will likely be absent from work due to her impairments more than four days per month (when she only works two days a week) and that these limitations are due to her "chronic abdominal pain and distension" and "also cognitive impairments from the medication she is on" for her abdominal problems. Doc. 13-7. Johnson also points to her own testimony that she cannot lift a gallon of milk (weighing approximately 8.6 pounds). Ultimately, Johnson argues that Dr. Williams' medical source statement and her testimony about her limitations prove that she cannot perform light work, and since the ALJ failed to articulate how the medical records show otherwise his RFC finding cannot be supported by substantial evidence.

The court finds that Johnson's argument lacks merit for several reasons. First, Johnson has not persuaded the court that an ALJ must accept a claimant's limitations as provided in a medical source statement when those limitations are not supported by the

---

[4] Dr. Williams' recommendation that Johnson can have frequent exposure to environmental problems is perplexing given her COPD and Dr. Williams' own treatment record from February 12, 2014, wherein he notes that Johnson's shortness of breath is aggravated by smoke and dust. Doc. 13-7.

14

medical evidence. Nor has Johnson persuaded the court that the ALJ failed to show how his light-work RFC finding is supported by the medical evidence. To the contrary, the ALJ considered Dr. Williams' medical source statement but ultimately gave the limitations contained therein little weight—and rightfully so since the extreme nature of those limitations is not borne out by the medical evidence, as explained in the ALJ's decision and below.

Johnson's medical records show that she was treated at the Mayo Clinic Jacksonville in 2012 for abdominal pain and distension. Those records indicate that she had been experiencing abdominal pain and distension since 2006, that she had a repeat laparoscopic lysis of adhesions in 2008, but that she had not seen a doctor since then. A CT of her abdomen and pelvic area was negative. Johnson was diagnosed with abdominal pain and referred for rehabilitation with no work limitations.

The next medical record is from January 2014, when Johnson began treatment with Dr. Williams at PrimeCare. On her first visit, she reported symptoms of a cough, sinus congestion, and headache. At that visit, she did not complain of abdominal pain, was not in acute distress, and had normal range of motion. On February 12, 2014, Dr. Williams saw Johnson for a routine blood pressure check and noted that she "has done fairly well with no interim problems," that she "is without any complaints or problems at this time," and that she specifically denies abdominal pain. Doc. 13-7. Upon exam, she was noted to have normal gait, normal tone, and the ability to stand without difficulty. Johnson was treated by Dr. Williams again on February 28, 2014 for complaints of a non-productive cough, fever, and wheezing; she denied any additional symptoms. Dr. Williams treated

Johnson for another non-productive cough and upper respiratory tract symptoms on March 10, 2014, but she again denied any additional symptoms. In April 2014, Johnson was treated by Dr. Emily Jones at PrimeCare for a rash. She did not complain of abdominal pain and was not in acute distress at that time.

In fact, it was not until May 2014 that Johnson first complained to Dr. Williams of abdominal distension, which she claimed to be causing lower back pain that radiated into her leg. Dr. Williams noted that Johnson had diffuse abdominal tenderness to palpation, abdominal distension, and moderate lumbar spine tenderness to palpation. However, she otherwise was noted to have normal range of motion, normal gait, normal tone, normal reflexes, normal sensation, and the ability to participate in an exercise program.

Dr. Williams treated Johnson again on August 4, 2014 for abdominal pain, fullness, and bloating. Johnson reported to Dr. Williams that her pain was severe and that eating, exercise, standing, and sitting exacerbated it. She also reported to Dr. Williams that her employer would not allow her to continue working due to the side effects of her pain medications. Upon exam, Dr. Williams noted mild epigastric region lower abdominal tenderness to palpation and abdominal protuberance, and stated that Johnson could not work because of her chronic abdominal pain and distension "as well as cognitive problems secondary to medication." Dr. Williams completed his medical source statement on the same day.

There are no further treatment records until June 23, 2015, almost a year after Johnson's August 2014 visit with Dr. Williams, when she was seen for a regularly scheduled blood pressure check. Dr. Williams noted that Johnson has "done fairly well

with no interim problems" since her August 2014 visit and that she "states she is doing well and is without any complaints or problems at this time." Doc. 13-7. Johnson specifically denied abdominal pain and, upon exam, was noted to have a non-tender abdomen to palpation. She was also noted to have normal range of motion, normal gait, normal reflexes, normal tone, and the ability to stand without difficulty.

From this evidence, it was reasonable for the ALJ to assign Dr. Williams' severe physical limitations little weight, as the medical evidence demonstrates that those limitations are not supported by Dr. Williams' own medical records or the other medical evidence. To the contrary, the record evidence indicates that, while Johnson may have abdominal pain and distension, those issues did not limit her ability to perform work-related activities in a significant way because Dr. Williams noted on multiple occasions that Johnson still retained a normal gait, normal tone, normal reflexes, the ability to stand without difficulty, and even the ability to participate in an exercise program.

The ALJ also reasonably discounted the credibility of Johnson's testimony regarding the severity of her medical conditions and the physical limitations they cause. Although Johnson testified she could not lift even a gallon of milk or sit for more than 30 minutes before having to stand, her function report shows that her medical conditions do not cause her problems with personal care, such as dressing, bathing, feeding herself, and using the toilet; she cooks daily for around 30 minutes; she does laundry, cleans, and rides the lawn mower; she goes outside daily; she rides in and drives a car; she goes out alone; she shops and handles money; she reads, makes crafts, and watches television; she spends time with others; she goes to the ballpark, shopping, and to her families' homes regularly;

and she has no problems with understanding or following instructions. In fact, in her function report, Johnson writes that she can lift up to 20 pounds before it causes her pain. Based on this evidence, along with Johnson's infrequent medical treatment,[5] it was reasonable for the ALJ to discount her testimony of a severely disabling medical condition.[6] Accordingly, the court finds that the ALJ's RFC finding is supported by substantial evidence.

### 3. *Improper Rejection of Uncontroverted Medical Opinion*

Finally, Johnson argues that the ALJ erred by rejecting Dr. Williams' uncontroverted medical opinion as to her physical limitations because "no medical opinion in the file contradicts the physical limitations placed" on Johnson by Dr. Williams. "An ALJ may not discount a treating physician's opinion without articulating good cause for doing so." *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 541 (11th Cir. 2016). "Acceptable reasons for discounting the opinion of a treating physician are that it is conclusory; it is unsupported by medical evidence; it is inconsistent with the record as a whole; or other evidence supports a contrary finding." *Id.* (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (holding that treating physician's

---

[5] Although Johnson does not specifically argue that the ALJ improperly relied upon her infrequent medical treatment as a reason to discount the credibility of her testimony, she does point out that she testified she could not afford health insurance. While Johnson did testify that she could no longer afford health insurance after she began working part-time in March 2014, she did testify that she had health insurance through March 1, 2014, but still had infrequent medical treatment up until that point. Moreover, while Johnson testified that she could not afford health insurance after she began working part-time in March 2014, she did not testify that she could no longer afford medical care whatsoever, and she continued seeing Dr. Williams after her positon became part-time.

[6] To the extent Johnson challenges the ALJ's decision to assign the opinion of her employer little weight, that decision was reasonable, as Johnson's employer is not a trained medical professional and his opinion was based on the claimant's subjective complaints, which the ALJ reasonably found lacking credibility.

testimony was properly discounted when it was inconsistent with physician's own treatment reports and the record as a whole and appeared to be based on the claimant's subjective complaints). For the reasons explained in Part III.C.2 above, Dr. Williams' own medical records, and the other medical evidence in the file, contradict the severe limitations he imposed on Johnson in the August 4 medical source statement. Thus, it was reasonable for the ALJ to discount the opinions contained in Dr. Williams' medical source statements. Accordingly, the court concludes that the ALJ did not err by improperly rejecting an uncontroverted medical opinion.

## IV.  CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons stated above, the decision of the Commissioner is AFFIRMED. A final judgment consistent with this opinion will be entered separately.

DONE this 5th day of March, 2018.

/s/ Gray M. Borden
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE